UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA KENNEDY,

    Plaintiff,

v.                                                  Case No.  8:20-cv-367-T-60CPT

NISHA, INC.,
d/b/a LAKE IDA BEACH RESORT

    Defendant.
_____/

### ORDER DENYING "DEFENDANT NISHA INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE"

This matter is before the Court on "Defendant Nisha Inc.'s Motion to Dismiss Plaintiff's Amended Complaint with Prejudice," filed on March 20, 2020. (Doc. 11). On March 31, 2020, Plaintiff Patricia Kennedy filed a response in opposition to the motion. (Doc. 12). On May 19, 2020, Plaintiff submitted a notice of supplemental authority to further support her opposition. (Doc. 19). On August 11, 2020, the Court held a hearing to address this matter. After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

Plaintiff Patricia Kennedy is a disabled person within the meaning of Title III of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* She considers herself to be an advocate for disabled persons and "tests" websites for

compliance with the ADA and federal regulations by visiting and evaluating the websites of places of public accommodations such as hotels.[1]

Defendant Nisha, Inc. operates a hotel located in Winter Haven, Florida. Between August and October 2019, Plaintiff visited the website hosted by Lake Ida Beach Resort ("Lake Ida"), as well as several other third-party websites, which allow customers to book reservations at Lake Ida. Plaintiff alleges that when she visited these websites, she discovered that they did not comply with the requirements set forth under 28 C.F.R. Section 36.302(e). Plaintiff initially filed her action in the Southern District of Florida as Case No. 0:19-cv-62732-AHS in November 2019, but it was dismissed in February 2020. On February 15, 2020, Plaintiff re-filed the action in the Middle District of Florida.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

---

[1] The Court notes that a CM/ECF search for Plaintiff reveals that *she has been a plaintiff in at least 385 cases in the Middle District Florida*, and it appears she has also filed lawsuits in other jurisdictions, including the Southern District of Florida. Although the Court has not thoroughly examined each case, it appears that the vast majority of these cases are ADA lawsuits.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

Defendant moves to dismiss the complaint based on lack of subject matter jurisdiction, arguing that (1) the controversy is moot because Defendant has made modifications to its own website as well as the websites of the third-party booking services, and (2) Plaintiff does not have standing to pursue her claims. (Doc. 11).

### *Mootness*

Defendant first argues that there is no longer any controversy because it made changes to its own website and the third-party websites that bring these websites into compliance with the ADA before the case was filed in the Middle District of Florida. When making a claim of mootness based on the voluntary cessation of illegal activity, the party making the claim of mootness bears "[t]he 'heavy burden of persuad[ing]' the court that the challenged conduct cannot

reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 189 (2000) (citing *United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968)). "A defendant's assertion that it has no intention of reinstating the challenged practice 'does not suffice to make a case moot' and is but 'one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.'" *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (quoting *United States v. W.T. Grant*, 345 U.S. 629, 633 (1953)).

When evaluating whether a controversy has become moot, a court looks primarily at the following three factors:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Id.*

Here, Plaintiff alleges that prior to the commencement of her lawsuit, on numerous occasions, she visited the Defendant's own website and the third-party booking sites and found that the websites was not in compliance. She identifies several alleged ADA violations on the websites, including that they failed to identify or allow for booking accessible rooms and provided insufficient information about accessibility. Plaintiff acknowledges that the Defendant's website was recently modified in response to the case that was filed in the Southern District of Florida.

If that were the end of the analysis Defendant's motion would be well taken. But that is not the situation presented here. Instead, Plaintiff has alleged in the case filed in this district that the website in question *still fails* to provide sufficient information about what features in the room are accessible, why any such features are accessible, or whether any other feature at the hotel is accessible. At this stage of the proceedings, the Court cannot accept Defendant's self-serving affidavit to resolve factual questions. As such, the Court finds that the issues in this case are not moot.

### *Standing*

Defendant additionally argues that Plaintiff does not have standing under Title III of the ADA. "To establish standing under Article III of the Constitution, a plaintiff must allege the following: (1) injury in fact; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision." *Kennedy v. Schling LLC*, No. 6:17-cv-74-Orl-22TBS, 2017 WL 6597119, at *2 (M.D. Fla. Nov. 14, 2017) (internal quotations omitted).

The fact that a patron is a tester – someone who visits a location for the sole purpose of "testing" whether that establishment is compliant with the ADA or other laws – does not by itself deprive the plaintiff of standing under the ADA. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013). Instead, to establish standing, "a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Parks v. Richard,* No.

2:20-cv-227-FtM-38NPM, 2020 WL 2523541, at *1 (M.D. Fla. May 18, 2020) (quoting *Houston*, 733 F.3d 1323)).

To determine whether a plaintiff can show a likelihood of future injury, courts typically apply the four-factor test set out in *Houston*, considering: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *Id.* at *2 (quoting *Houston*, 773 F.3d at 1327). Because "those factors are neither exclusive nor dispositive," courts must consider the totality of the circumstances to evaluate the threat of future injury. *Id.* However, "the *Houston* factors are difficult to apply in website cases, which usually present intangible barriers that can be felt far away from the property." *Id.* at *3. Some courts will still apply the *Houston* factors, while others will only do so to the extent that it is appropriate considering the facts of the case. *Id.* (internal citations omitted).

In a very similar case concerning an ADA plaintiff and hotel websites, another court in this district found that a plaintiff established standing as a tester due to the likelihood of future injury where: (1) the distance of around 165 miles between the plaintiff and the hotel made it more likely that he would use the hotel; (2) the plaintiff visited the hotel's website at least once, as well as third-party websites; (3) the plaintiff alleged a definite plan to use the websites again in the future and claimed to maintain a system to recheck for compliance; and (4) the plaintiff alleged that he has visited the websites and will do so again. *See Parks*,

2020 WL 2523541, at *3.  It should be noted that in *Parks*, and other similar cases such as *Poschmann v. Fountain TN, LLC*, No. 2:19-cv-359-FtM-99NPM, 2019 WL 4540438 (M.D. Fla. Sept. 19, 2019), the focus of the tester's ADA claim was limited to the hotel's website, not the hotel itself.  In these kinds of cases, the tester brings a claim with no intention whatsoever of ever visiting the hotel property.  Stated differently, the tester is testing the website's ADA compliance, not the hotel's ADA compliance.

The law in this area is still developing.  Recently, there has been "an explosion of cases" concerning ADA issues associated with websites.  *Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1270 (M.D. Fla. 2019).  There are good arguments for subjecting such claims to different standing considerations, and "[c]ourts have struggled to apply traditional principles of standing to these website cases and have disagreed about what features a website must have to comply with the ADA."  *Id*.  Likewise, in reaching its holding, the *Parks* court observed that "ADA website cases are somewhat tricky because courts nationwide are trying to fit the square peg of an online injury into the round hole of traditional standing analysis . . . and there is little authoritative guidance to help district courts."  *Id*. at *2. (citation omitted).  "There is disagreement about when a website impedes access to a physical location, or whether a plaintiff must actually visit a 'place of public accommodation' to state a claim after having visited a website.  And that is to say nothing of the uneven application of the *Houston* factors in Title III website cases. Guidance is sorely needed in this arena." *Price,* 375 F. Supp. 3d at 1272.

Nonetheless, the weight of the law, as it currently exists, supports Plaintiff's argument as to standing. After applying the *Houston* factors here, the Court finds that Plaintiff has standing. The motion to dismiss is denied.

## Conclusion

As the law currently stands, an ADA website "tester" can surf the internet from the confines of his or her own living room, or anywhere else in the world they happen to be located, and file ADA lawsuits against hotels throughout the country that they will never actually visit, or even hope to visit. The ADA "tester" receives nothing in return for his or her efforts, other than perhaps the satisfaction of knowing that a hotel's website – that they have never, and will never, visit – is ADA compliant. But the lawyers, on both sides, are compensated. Under such circumstances, one might ask, as a matter of practical common sense, whether an actual "case or controversy" really exists.

Perhaps this is what Congress intended when it enacted the ADA, or perhaps not. On one hand, it may be an efficient way of privatizing ADA enforcement. Rather than having to pay investigators and government lawyers to police hotel websites for ADA compliance, enforcement is instead conducted by uncompensated private ADA "testers" and their privately retained lawyers. On the other hand, the present situation may represent a step beyond what Congress intended, and one that is creating unnecessary litigation throughout the country. "Guidance is sorely needed in this arena." *Price* 375 F. Supp. 3d at 1272.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant Nisha Inc.'s Motion to Dismiss Plaintiff's Amended Complaint with Prejudice" (Doc. 11) is hereby **DENIED**.

2. Defendant is directed to file an answer on or before October 2, 2020.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of September, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**